UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRUSTEES OF THE U.A. LOCAL 38 DEFINED BENEFIT PENSION PLAN,** *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**TRUSTEES OF THE PLUMBERS AND PIPE FITTERS NATIONAL PENSION FUND,** *et al.*,<br><br>    **Defendants.** | **Case No.: 13-CV-5528 YGR**<br><br>**ORDER OF DISMISSAL** |

Now before the Court is a declaratory judgment action filed by Plaintiff Trustees of the U.A. Local 38 Defined Benefit Pension Plan, *et al*. ("Local 38"), in which Local 38 seeks a declaration on the question of whether ERISA or the common law of contracts applies to an ongoing arbitration dispute. Defendant Trustees of the Plumbers and Pipe Fitters National Pension Fund, *et al*. ("National"), has filed a Motion to Dismiss for lack of jurisdiction. Having considered the papers and arguments presented, and for the reasons set forth below, the Court finds that the Federal Arbitration Act precludes the Court from granting the relief Local 38 seeks and therefore **DISMISSES** this action.

## FACTUAL BACKGROUND

The parties' underlying dispute centers on whether Local 38 breached its obligations to National under the terms of the parties' Reciprocity Agreement and if so, what remedies result. Importantly, arbitration concerning this dispute is already underway, and neither party argues that the ongoing arbitration should be enjoined. Indeed, both parties concede that the arbitrator will ultimately resolve the question of whether there was a breach of the Reciprocity Agreement, and that the Federal Arbitration Act controls the arbitral process. The parties disagree, however, on the

question of which body of law should apply to the arbitration: ERISA or the common law of contracts.

The parties discovered their disagreement only after they had invoked and begun the arbitral process as set forth in the Reciprocity Agreement. (Compl. ¶ 3, 18-30, 36; *id*. Exh. F.) On a conference call with the arbitrator, it became clear that National preferred the law of contracts, while Local 38 preferred ERISA. (Compl. ¶ 24-30.) National's representative apparently suggested that the arbitrator did not have authority to determine the answer to the question of what law applies. (Compl. ¶ 30; Tr. at 27:7-15.) Local 38's representative countered that the arbitrator "ha[d] the full authority to decide the question." (Tr. at 28:10-11.) The arbitrator thus "decided [to] cede his authority [to this Court] just to this one question as to whether or not ERISA regulates the dispute." (Tr. at 25:1-3.) Ironically, the arbitrator ordered Local 38, the party who had originally asserted that the arbitrator should decide the choice of law question, to file the instant declaratory judgment action. National, the party who first suggested that the choice of law question should be determined not by the arbitrator but by this Court, now argues that this Court lacks jurisdiction over it. The arbitrator further instructed that should Local 38 fail to bring this declaratory judgment action within a certain timeframe, the arbitrator would proceed with arbitration on the claim "as heretofore communicated between the parties." (Compl. Ex. F.)

Thus, from this confusion springs forth an odd request: that this Court "guide the Arbitrator in resolving the dispute between the parties" (Compl. ¶ 44) and determine what law should apply to the arbitration. Before the Court reaches this question, however, it must first determine whether it may properly entertain such a request. The Court's inquiry both begins and ends there.

## LEGAL FRAMEWORK

The parties concede that the arbitration to which they are currently parties falls within the ambit of the Federal Arbitration Act ("FAA") and will resolve the underlying dispute. (Dkt. Nos. 43, 44.) The FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements," and is meant "to ensur[e] that private arbitration agreements are enforced according to their terms." *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (internal quotation marks and citations omitted).

The FAA "creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 918 (9th Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). The FAA reflects a federal policy favoring arbitration, "a fundamental principle that arbitration is a matter of contract," and requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1745 (citations omitted). The broad policy favoring arbitration is further reinforced by the fact that ambiguities as to the scope of the arbitration provision must be interpreted in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *see also AT & T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).

In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) ("Parties generally favor arbitration precisely because of the economics of dispute resolution") (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001)).

Accordingly, the FAA contemplates only two stages at which courts may become involved in arbitration proceedings. *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 717 (6th Cir. 2014). At the outset of any dispute, the laws authorize courts to decide certain "gateway matters" of arbitrability, "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Id.* (citing *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 n.2 (2013) (internal quotation marks omitted); *see* 9 U.S.C. §§ 3–4 (authorizing courts to entertain challenges to the arbitrability of a given dispute by granting motions to stay judicial proceedings or compel arbitration)). Then, at the conclusion of an arbitration proceeding, courts are authorized to enter an order confirming, vacating, or modifying the award, but even so, awards may be disrupted only under very narrow circumstances. *See id.* (citing 9 U.S.C. §§ 9–11; *Oxford Health Plans*, 133

S.Ct. at 2068). An award will not be set aside unless it manifests a complete disregard of the law. *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996). Thus, an award must be confirmed if the arbitrators even arguably construed or applied the contract and acted within the scope of their authority. *United Food & Commercial Workers Int'l Union v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995). That limited judicial review "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Oxford Health Plans*, 133 S.Ct. at 2068 (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). To allow parties to arbitration to take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.*

## APPLICATION

By way of the instant declaratory judgment action, Local 38 asks this Court to decide a matter squarely within the arbitrator's authority. This is evident first from the nature of the text of the arbitration provision in the Reciprocity Agreement itself, and reinforced by Local 38's admission in oral argument and the arbitrator's underlying order. Section 13 of the Reciprocity Agreement provides that:

> **Any dispute** or disagreement arising from this Agreement between any signatory pension funds involving the operation or interpretation of this Agreement that cannot be resolved must be reviewed with the Reciprocity Coordinator. The Reciprocity Coordinator will provide assistance to the efforts of the pension funds to resolve the dispute, but he shall have no authority over the parties or any discretion over application and interpretation of this Agreement. If the disputing pension funds cannot resolve the dispute by mutual agreement after consultation with the Reciprocity Coordinator, either party may request that **the dispute be resolved by arbitration**. If the disputing pension funds cannot agree on an arbitrator within 30 days after the request for arbitration, the disputing pension funds will select an arbitrator from a panel of five arbitrators from the American Arbitration Association. Any decision of the arbitrator shall be final and binding only on the specific pension funds that are party to the dispute, and the costs of the arbitration shall be borne equally among each of those pension funds.

(Compl., Ex. A (emphasis supplied).)

4

Here, the parties are engaged in arbitration concerning whether Local 38 breached the Reciprocity Agreement and if so, what remedies are proper. A straightforward reading of the Reciprocity Agreement gives the arbitrator the authority to resolve that dispute in total, which includes determining what law applies as a predicate determination for the ultimate resolution. The Reciprocity Agreement does not envision that a certain segment or question that forms part and parcel of resolving an arbitral dispute may be "ceded" by the arbitrator to a federal court. Rather, once the parties have elected to proceed to arbitration, the Reciprocity Agreement contemplates that the entire dispute will be resolved in arbitration.[1]

Far from the parties' apparent "agreement" that the arbitrator "has no jurisdiction over the issue" presented to this Court, as Local 38 claims (Dkt. No. 43 at 4), Local 38 conceded at argument that the arbitrator has full authority to decide the question of whether ERISA or the law of contracts applies and that it had even informed the arbitrator of this fact. Nevertheless, the arbitrator partially ceded his authority and asked this Court to decide the issue. Importantly, the arbitrator elected to retain residual authority to resolve the entire matter, including necessarily what law should apply to the arbitration, as his order provided that if this declaratory judgment action was not filed by a date certain, the arbitration would nevertheless proceed. (Compl. Ex. F.)

Local 38's request that the Court rule interlocutorily on a question well within the authority of the arbitrator during the course of an ongoing arbitration must be denied. First, it contravenes the purpose of the FAA, which was designed to ensure the speedy resolution of grievances without the time and expense of court proceedings. *Oxford Health Plans*, 133 S.Ct. at 2068; *Aerojet-General*, 478 F.2d 248, 251 (9th Cir. 1973). Mid-arbitration resort to the federal courts would result in piecemeal litigation of a claim. *See, e.g., Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *Liberian Vertex Transports, Inc. v. Associated Bulk Carriers, Ltd.*, 738 F.2d 85, 87 (2d Cir. 1984); *see also Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 874 (7th Cir. 2011) (noting that if parties could obtain interlocutory review of arbitral decisions, "[t]hat would be the end of arbitration as a speedy and (relatively) low-cost alternative to litigation").

---

[1] Counsel for Local 38 represented to the Court that regardless of what law applies, the arbitrator has authority to resolve the parties' dispute. (Tr. at 28:3-5.)

5

Thus, court review of arbitration proceedings prior to the rendition of a final arbitration award is inappropriate absent a showing of extraordinary circumstances. *See Aerojet-General*, 478 F.2d at 251 ("Only an extreme case could warrant such judicial review, and this is emphatically not such a case.")  Neither party has argued that the circumstances here qualify as such.

Second, the text and structure of the FAA supports the notion that judicial intervention should be withheld unless it relates to either gateway questions concerning arbitrability at the outset of arbitration or the limited scope of judicial review at the arbitration's end. *See Savers Prop.*, 748 F.3d at 717-18 (listing the courts of appeals to have found that because the FAA does not provide for interlocutory review and contemplates judicial review only at the outset and at the conclusion of arbitration, interlocutory review of arbitral proceedings is improper).  At the conclusion of arbitration, an arbitrator's final award will not be set aside unless it meets the standards set forth in the FAA. *See* 9 U.S.C. §§ 9-11; *Oxford Health Plans*, 133 S.Ct. at 2068.  For this Court to entertain questions properly before an arbitrator in advance of any final arbitration decision would work an end-run around the Federal Arbitration Act's limited and deferential standard of judicial review for final arbitral awards.

Accordingly, Local 38's request that this Court intervene to guide the hand of the arbitrator was plainly improper.  If, at the conclusion of the arbitration, either party chooses to seek judicial review of the arbitrator's final decision, they are free to do so subject to the standard of review provided in the FAA.  But at this point, the questions properly put to the arbitrator remain to be decided by him.

For these reasons, this action is **DISMISSED**.  The Clerk is directed to terminate the docket and close the file.

**IT IS SO ORDERED**.

Date: **July 30, 2014**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**